**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Felicia M. Allen, Peter Obarro, Sean Perry,
Vernon Watsen, Albert Spivak, Karen
Mitchell, Nathaniel White, Deshawn King,
Earl Allen, Akini Celestine, Michael Cole

     Plaintiffs,

       v.

AECOM, dba Tishman and purported
"Third Party Corporation,"

**COMPLAINT**

Case No.  18-cv-4259 (      )

Jury Trial Demanded

## NATURE OF THE ACTION

1.     Felicia Allen is a different sort of woman, though this is not a case grounded

in gender. One of few women who work in construction – an industry so male-

oriented that people on the job (including Felicia) still refer to the workers as

"men," she has risen through the ranks and is both a Journeyman and Shop

Steward. In April 2018, she found a horrific, obscene discriminatory poster literally

promoting racist in the workplace in – of all places – the safety office at AECOM.

She spoke out. The poster is attached as "Exhibit A" and it depicts an African

American man – or a non-American man of color – with a noose around his neck

as he worked construction on a ladder. The poster had the caption: "Always

Remember - Safety at Work."

## JURISDICTION, VENUE & PARTIES

2.      Jurisdiction currently exists under federal question jurisdiction, specifically 42 U.S.C. § 1981 and diversity of citizenship insofar as plaintiffs are citizen of New York, and defendant AECOM known in this City for so long as Tishman Construction. The purported "Third Party Corporation" citizenship and name is unknown; AECOM blames the entire situation of this third party, which, though asked, has refused to identify. Nevertheless, the third party remains full under AECOM's control.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) in that the unlawful conduct alleged in this Complaint occurred in this District.

4.      Felicia Allen, Peter Obarro, Sean Perry, Vernon Watsen, Albert Spivak, Karen Mitchell, Nathaniel White, Deshawn King., Earl Allen, Akini Celestine and Michael Cole are all people of color, plumbers, electricians, Tin Knockers, carpenters, grime workers. They variously reside in Bronx, New York and Kings County.

## FACTUAL ALLEGATIONS

5.      Plaintiffs reallege the above paragraphs and incorporates them by reference as though fully stated herein.

6.      Plaintiffs work at a construction site at midtown – the location is immaterial at this time, unless the alleged "third party vendor" is the entity that hired AECOM.

7.      Almost all of the construction workers at this site are people of color.

8.      All new employees are taken through an orientation, which includes a "Safety Office" tour explaining the safety procedures, and reasons whereby one might want to visit the safety office.

9.      There is a bulletin board with a number of postings at the safety site, all arranged precisely, evenly spaced, approximately four 8.5 by 11-inch notices with various information pertaining to office safety, like this:



10.     Until recently, in the safety office, on the bulletin board, someone with access and control posted the document attached as Exhibit A, a picture of a man of color doing construction on a ladder with a noose around his neck, with the horrifically ironic caption, "Always Remember - Safety at Work."

11.     This poster made a reference to lynching, a practice used mostly in the South as a device to terrorize black individuals after Reconstruction as a means to promote white supremacy. A Museum in Montgomery was recently opened in Montgomery, Alabama which commemorates those who were lynched in the South, which was really nothing more than an extension of slavery.

12.     Lynching is a practice of extrajudicial punishment – terrorism, really – sometimes with the nod of approval from the authorities. It that was imposed when white people suffered slights like looking at a white person, and often when black men were falsely accused of raping white women.

13.      As the powers of the African Americans decreased in the 19th Century after the false promise of emancipation, and Jim Crow practices were emerging, lynching caught hold, documented by Ida Tarbell in Southern Horrors, and Ida Wells, a reporter from Memphis who wrote in opposition to this practice. As it proliferated, she was forced to leave town in the wake of the outrage set off by her words.

14.     Ida Wells moved from Memphis to New York City, which gave her a platform for a national audience. For the rest of her life, she fought lynching from this City, thus it is ironic that a picture of lynching would be posted in the AECOM safety site.

15.     All of the plaintiffs saw this – plus many more - and were highly offended. Most of AECOM management is Caucasian as are the two people in the safety office.

16.     The image of lynching in the safety office sends the message that the Caucasian powers really do not care about the black workers' safety.

17.    What is more, why was there no one who saw that image – which was in the center of the bulletin board and clearly visible – and take it down? It was taken down but impossible to miss.

18.    Felicia Allen saw the poster in plain view, was shocked reported it to Human Resources, indicating that there was "a discriminatory poster than needed to be taken down immediately." She did not describe it, but made it plain that it was inflammatory and needed to be taken down right away.

19.    Human resources did nothing. Felicia contacted AECOM human resources again a week later through a representative and sent a snapshot of the picture. It took two additional days from that letter for the poster to be taken down.

20.    The more important question is that why it was not taken down at an earlier time? Someone in the safety office must have seen it, and new employees are taken there every day new workers are hired.

21.    Someone with discriminatory intent put an image of Southern Horrors – a reminder of terrorism during the time of Jim Crow – and did not take it down.

22.    This singular event – which is really a series of events over the period of time the poster remained posted – constitutes certainly a severe and perhaps even a pervasive form of racial harassment in the workplace. Someone seeing that photo in the safety office will not be able to forget the image and the message it sends when he or she goes out to his or her job.

23.     Plaintiffs now rightly seek redress.

## FIRST CAUSE OF ACTION
## RACE DISCRIMINATION 42 U.S.C. § 1981

24.     Plaintiffs reallege the above paragraphs and incorporates them by reference as though fully stated herein.

25.     As a result of the foregoing, plaintiffs were subject to a hostile work environment and demand compensatory and punitive damages.

## RACE DISCRIMINATION IN VIOLATION OF
## THE NEW YORK CITY HUMAN RIGHTS LAW

26.     Plaintiffs reallege the above paragraphs and incorporates them by reference as though fully stated herein.

27.     New York City Human Rights Law 8-107, et seq., and amendments thereto, make it an unlawful employment practice to  . . . discriminate against any individual in any manner if race is a motivating factor in the adverse action taken with respect to his or her compensation, or terms or conditions, or privileges of employment.

28.     As a result of the foregoing, plaintiffs suffered a hostile work environment and demand compensatory and punitive damages.

WHEREFORE, Plaintiff respectfully request that this Court find against Defendant as follows:

a.    Award Plaintiff the value of all compensation and benefits lost and that will be lost in the future as a result of defendants' unlawful conduct, including compensatory damages for emotional distress well in excess of $75,000, the jurisdictional minimum;

b.    Award Plaintiff prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

c.    Award Plaintiff such other relief as this Court deems just and proper.

Dated:    New York, New York
          May 12, 2018

By:    */s/ Greg S. Antollino*
       Gregory Antollino, Esq.
       Attorney for Plaintiff
       275 Seventh Avenue # 705
       New York, NY 10001
       (212) 334-7397

# Always Remember Safety First ✓

